**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| JOHN RILEY,<br><br>    Plaintiff,<br><br>v.<br><br>LEAR CORPORATION,<br><br>    Defendant. | Civil Action No. 2:26-cv-00593<br><br><br>JURY TRIAL DEMANDED |

## <u>COMPLAINT</u>

Plaintiff John Riley ("Riley"), by and through undersigned counsel, brings this action against Defendant Lear Corporation ("Lear") for violations of the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. ("FLSA"), and alleges as follows:

### NATURE OF THE ACTION

1. This action arises from Lear's misclassification of Riley as exempt from the overtime requirements of the FLSA and its resulting failure to pay him one and one-half times his regular rate for all hours worked over 40 in a workweek, in violation of 29 U.S.C. § 207(a)(1), as well as Lear's termination of Riley in retaliation for repeatedly complaining that he was not receiving the overtime premiums required by law, in violation of 29 U.S.C. § 215(a)(3).

## JURISDICTION AND VENUE

2.    This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because this action arises under federal law and under 29 U.S.C. § 216(b), which authorizes an employee to bring an action for violations of 29 U.S.C. §§ 207 and 215(a)(3) in any federal or state court of competent jurisdiction.

3.    Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to Riley's claims occurred at Lear's facility in Montgomery, Alabama.

## PARTIES

4.    Riley is a resident of Montgomery, Alabama and at all relevant times, Riley was an "employee" within the meaning of 29 U.S.C. § 203(e)(1) and was engaged in commerce or in the production of goods for commerce within the meaning of the FLSA.

5.    Lear is a Michigan corporation with its corporate headquarters in Southfield, Michigan, and operates a plant at 200 Folmar Parkway in Montgomery, Alabama. At all relevant times, Lear was Riley's "employer" within the meaning of 29 U.S.C. § 203(d).

6.    Lear is an enterprise engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 203(r) and 203(s), and its annual gross volume of sales made or business done exceeds $500,000.

2

7. Lear is subject to service of process through its registered agent, C T Corporation System, 2 N. Jackson Street, Ste. 605, Montgomery, AL 36104.

## FACTUAL ALLEGATIONS

8. Lear hired Riley on May 8, 2023, as a Payroll Administrator in the Finance Department at its Montgomery plant.

9. In Lear's April 21, 2023 offer letter to Riley, the company stated he would be paid an annual salary of $55,000.

10. Lear's offer letter also expressly designated Riley as overtime eligible but stated that he would receive only straight-time pay for hours worked over 45, time-and-one-half pay only for hours worked over 60, and time-and-one-half pay for hours worked on a company-paid holiday.

11. The offer letter further stated that Riley's overtime had to be preapproved by a department, operations, or plant manager.

12. Nevertheless, during his employment, Lear treated Riley as exempt from the FLSA's overtime-premium requirement.

13. Riley's primary duties included payroll processing, journaling, reconciliation, invoice verification, and data entry.

14. Riley's primary duty was not managing Lear or a customarily recognized department or subdivision of Lear. He did not customarily and regularly direct the work of two or more full-time employees and lacked authority to hire or

3

fire employees or make recommendations given particular weight concerning such decisions.

15.    Riley's primary duty did not include the exercise of discretion and independent judgment concerning matters of significance. He followed established systems, procedures, and deadlines to process payroll and complete routine finance work.

16.    Riley's work did not require advanced knowledge in a field of science or learning customarily acquired through a prolonged course of specialized intellectual instruction.

17.    Riley thus did not qualify for the executive, administrative, learned-professional, or any other exemption from the FLSA's overtime requirements.

18.    Riley regularly worked more than 40 hours in more than one workweek throughout his employment with Lear. He often arrived early, stayed late, and worked extended hours during month-end and finance close-out periods.

19.    During certain close-out weeks, Riley worked more than 50 hours in a workweek.

20.    In addition to his Payroll Administrator duties, Riley performed work for Lear's Safety Department under Safety Manager Jeremy Edwards. Among other things, Riley removed trash, performed environmental checks around the plant, installed or repaired yellow floor striping, checked eyewash stations and fire

extinguishers to make sure they were operational, maintained inspection logs, and participated in safety-orientation meetings.

21.     Riley sometimes performed Safety Department work on weekends. Riley's manager, Tairian Nelson, knew that he performed this additional safety work for Mr. Edwards, including the knowledge that Riley performed the additional work on the weekends.

22.     Despite knowing that Riley worked more than 40 hours in one or more workweeks, Lear did not establish a reliable system for Riley to record all of his working time and did not maintain complete and accurate records of his hours worked.

23.     After learning that he should be receiving overtime premiums for any hours he worked over 40 each in a workweek, Riley created timesheets in Excel to document his hours and submitted printed copies of these spreadsheets to his manager, Ms. Nelson.

24.     Nelson repeatedly rejected or disregarded Riley's submitted timesheets that included hours over 40 for any workweek, including by returning them to his desk after he submitted them for her approval.

25.      As a result of Nelson's refusal to accept Riley's submitted timesheets, Lear failed to pay Riley overtime premiums for all hours worked over 40.

26.     Lear paid overtime to a temporary employee, Michael Pimmentel, during at least some of the same pay periods in which Riley worked overtime but was denied proper overtime pay.

27.     In early 2024, Riley complained to Nelson that he was not being properly paid for overtime work. Nelson became annoyed and dismissed his concerns.

28.     In approximately March 2024, Riley complained to Lear's Human Resources department that he was not being properly paid for his overtime hours and that he did not receive bonuses provided to other Finance Department personnel who worked extended close-out hours.

29.     Human Resources initially told Riley that he should receive time-and-one-half pay only for hours over 45. However, Riley explained to Human Resources that given his job duties, he should be receiving overtime premiums for all hours worked he worked over 40 in a workweek. Human Resources ultimately agreed with Riley that the overtime threshold applicable to Riley was 40 hours per workweek.

30.     Lear nevertheless continued to deny Riley overtime premiums for all hours worked over 40, including hours reflected on the timesheets Riley continued to submit to Nelson.

31.     In or about June 2024, Riley again complained to Nelson about Lear's failure to pay him proper overtime premiums.

32.    Rather than correct the underpayments, Nelson told Riley that she expected him to continue working overtime and that she would not approve payment for those hours.

33.    Soon after Riley's renewed complaint, Nelson instructed him to train a temporary employee to perform his Payroll Administrator duties, ostensibly so that more than one person would know how to perform the work.

34.    Riley complied and trained the temporary employee.

35.    On July 19, 2024, only weeks after Riley's renewed overtime complaint, Lear terminated Riley without prior warning.

36.    The person Riley trained then assumed Riley's former Payroll Administrator role.

37.    At the termination meeting, Nelson claimed Riley was being discharged because he needed to be more efficient and improve his Microsoft Excel skills, a software program he was proficient in and used frequently throughout his employment with Lear.

38.    Before terminating Riley, Lear had never disciplined or counseled him for performance problems, had never placed him on a performance-improvement plan, or warned him that his employment was in jeopardy. Riley timely completed payroll, journal entries, reconciliations, invoice processing, and close-out duties; assumed additional payroll responsibilities; and reduced an invoice backlog.

7

39. After Riley's termination, Lear asserted additional performance reasons that had never been communicated to him during his employment. Lear's shifting explanations for his termination, lack of prior discipline, replacement of Riley by the employee he trained, and the close temporal proximity between his protected complaints and his termination support the inference that Lear terminated Riley because he complained about unpaid overtime.

40. Lear knew or showed reckless disregard for whether its classification and pay practices violated the FLSA. Among other things, Lear's own offer letter to Riley stated he would only receive straight time pay for hours worked over 45 in a workweek and that he would only get time and a half statutory overtime premiums if he worked more than 60 hours in a workweek – with no straight time or overtime premium pay for hours worked between 40 and 45 per workweek.

41. Human Resources agreed that Riley was entitled to overtime premiums after working 40 hours in a workweek, but Nelson knowingly rejected or disregarded Riley's time records; and Lear continued the challenged practices after Riley repeatedly complained.

42. Lear failed to maintain any system by which Riley could keep a record of his hours worked; the spreadsheets he submitted to Nelson with his hours worked were of his own initiative.

8

43.    Lear's violations were willful within the meaning of 29 U.S.C. § 255(a). Riley therefore invokes the FLSA's three-year limitations period for each timely violation.

## COUNT I

### FLSA OVERTIME VIOLATIONS
### 29 U.S.C. §§ 207(a)(1) and 216(b)

44.    Riley incorporates by reference the preceding paragraphs as though fully set forth herein.

45.    The FLSA required Lear to pay Riley overtime compensation at one and one-half times his regular rate for every hour he worked over 40 in a workweek.

46.    Riley regularly worked more than 40 hours in a workweek during his employment at Lear, and Lear knew or should have known that he regularly worked over 40 hours in a workweek.

47.    Riley's actual job duties did not satisfy any exemption from the FLSA's overtime requirements, as such, Lear's payment of a salary and its unilateral exempt classification did not make Riley exempt.

48.    Lear violated 29 U.S.C. § 207(a)(1) by failing to pay Riley the required overtime premium for all hours he worked over 40 in one or more workweeks.

49.    Lear also failed to make, keep, and preserve accurate records of Riley's hours and wages as required by the FLSA.

50.    Lear's violations were willful and were not based on objectively reasonable, good-faith grounds.

9

51.     Under 29 U.S.C. § 216(b), Riley is entitled to recover his unpaid overtime compensation, an equal amount as liquidated damages, reasonable attorney's fees and costs, and all other available relief.

## COUNT II

### FLSA Retaliation

### (29 U.S.C. §§ 215(a)(3) and 216(b))

52.     Riley incorporates by reference the preceding paragraphs as though fully set forth herein.

53.     Riley engaged in activity protected by the FLSA when he repeatedly complained to his manager, Nelson, and to Human Resources that Lear was failing to pay him legally required overtime premiums.

54.     Lear knew of Riley's protected complaints.

55.     Lear subjected Riley to materially adverse actions, including refusing to approve or pay overtime he worked and by terminating his employment for complaining about not being paid overtime premiums.

56.     Riley's protected complaints were a but-for cause of Lear's decision to terminate him. The short interval between his renewed complaint about not being paid overtime premiums and his termination were in close temporal proximity, Nelson's instruction that Riley train his replacement, Riley's lack of any prior discipline, and Lear's shifting explanations for his termination demonstrate retaliatory intent and pretext.

10

57.    Lear thereby violated 29 U.S.C. § 215(a)(3).

58.    Lear's retaliation was willful. Under 29 U.S.C. § 216(b), Riley is entitled to legal and equitable relief, including lost wages and benefits, an equal amount as liquidated damages, reinstatement or front pay as appropriate, reasonable attorney's fees and costs, and all other available relief.

## PRAYER FOR RELIEF

WHEREFORE, Riley respectfully requests that the Court enter judgment in his favor and against Lear and award:

A.  A declaration that Lear violated the FLSA's overtime and anti-retaliation provisions;

B.  All unpaid overtime compensation owed within the applicable limitations period;

C.  An equal amount of liquidated damages for Lear's overtime violations;

D.  All lost wages, salary, and employment benefits resulting from Lear's retaliation;

E.  An equal amount of liquidated damages on Riley's lost wages and benefits resulting from Lear's retaliation;

F.  Reinstatement or, if reinstatement is not feasible, front pay;

G.  Prejudgment and post-judgment interest to the extent permitted by law;

H.  Reasonable attorney's fees and costs under 29 U.S.C. § 216(b); and

I.  All other legal and equitable relief the Court deems just and proper.

Respectfully submitted this 20th day of July, 2026.

**HKM EMPLOYMENT ATTORNEYS, LLP**

*s/  Artur Davis*
ASB-3672-D56A
2024 3rd Ave. North, Suite 212
Birmingham, AL 35203
Direct: 205-881-0935
E-mail: adavis@hkm.com

*s/ Jerilyn E. Gardner*
Jerilyn E. Gardner[1]
Georgia Bar No. 139779
3344 Peachtree Rd. NE
Suite 800, Office #35
Atlanta, GA 30326
Direct: 404-446-9544
E-mail: jgardner@hkm.com

---

[1] Ms. Gardner will file a motion for admission *pro hac vice*.